UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-343-RGJ

| | |
|---|---|
| NEW ALBANY MAIN STREET PROPERTIES D/B/A PORT OF LOUISVILLE | Plaintiff |
| v. | |
| WATCO COMPANIES, LLC AND MARIA BOUVETTE | Defendants |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Watco Companies, LLC ("Watco") moves to dismiss Plaintiff's Complaint. [DE 6]. Briefing is complete, and the matter is ripe. [DE 11; DE 12; DE 15]. For the reasons below, Watco's motion to dismiss [DE 6] is **DENIED**.

### I.     BACKGROUND

Port of Louisville "provides facilities and equipment for loading and unloading goods and commodities; barge fleeting and loading and unloading; ground storage; and truck and rail transportation." [DE 1 at 3]. In September 2008, Port of Louisville and Riverport Authority ("Riverport") executed a port facility lease. *Id.* In August 2016, after years of working together with no issues, Port of Louisville and Riverport executed a modified port facility lease ("Modified Lease"). *Id.* at 4.

In late 2018 and early 2019, Port of Louisville alleges that Watco, one of its competitors, began "secret negotiations with Maria Bouvette of the Riverport Authority to remove Port of Louisville as operator of the Port Facility and replace it." *Id.* In February 2019, "Watco entered into a Memorandum of Understanding with Riverport Authority to remove and replace Port of Louisville as the operator of the Port Facility." *Id.* Watco "began to develop suggestions for

pretexts to justify removing Port of Louisville and communicated these ideas to Bouvette." *Id.* at 5. At Watco's suggestion, Riverport hired a safety inspector and consultant to inspect Port of Louisville's equipment. *Id.* After the inspector and consultant issued their reports finding that the Port Facility was "mismanaged, unsafe, and in disrepair," Riverport and Watco used these reports "as justification for asserting that" Port of Louisville was in default of the Modified Lease. *Id.* Port of Louisville also alleges that "[a]s part of their efforts to remove Port of Louisville from the Port Facility, Watco and Bouvette tortiously interfered with a number of Port of Louisville's existing and prospective contracts and business relationships." *Id.* at 8.

In May 2019, "Watco and Bouvette's plan to replace and remove Port of Louisville as operator of the Port Facility was put into action when Riverport Authority's attorney sent a letter to Port of Louisville alleging it was in default of the Modified Lease." *Id.* at 6. Riverport then sued Port of Louisville in Jefferson Circuit Court "seeking to recover damages and compel compliance with the Modified Lease." *Id.* Port of Louisville answered, counterclaimed against Riverport for declaration of rights, accounting, breach of covenant of good faith and fair dealing, and injunctive relief, and demanded:

> 1. A declaration that defendant/counterclaimant Port of Louisville has not breached nor is in material default of the Modified Lease, that plaintiff Riverport Authority has waived or is estopped to assert any technical noncompliance by Port of Louisville with the Lease as a basis to declare default, that any such default has been timely cured under the Lease terms, that Port of Louisville is entitled to possession of the Leased Premises, that Mr. Cox's purported Notice letter of May 15, 2019 is not a "notice to vacate" and is a nullity and ineffectual, that the eviction action was untimely and prematurely brought, and that monetary obligations presently owed by Port of Louisville have been satisfied.
>
> 2. An accounting of all monies that plaintiff Riverport Authority has received from the railroads as Maintenance Charges pursuant to Modified Lease Section VI, G as well as a calculation of monies it claims to be owed it as a Railroad grant reimbursement.

    3. An injunction enjoining plaintiff Riverport Authority from terminating the Modified Lease, depriving defendant/counterclaimant Port of Louisville of its peaceful enjoyment of the Port Facility, or disrupting or interfering with its operations at the Port Facility and its relationships with its customers.

    4. Any damages incurred by defendant/counterclaimant caused by or flowing from plaintiff's wrongful actions, including punitive damages.

    5. Its costs, interest and reasonable attorney's fees.

    6. Trial by jury on all issues so triable.

    7. Any and all other relief to which defendant/counterclaimant may appear entitled.

[DE 6-2 at 58-59].

Riverport filed two forcible detainers on Port of Louisville to evict it from the Port Facility. [DE 1 at 6]. The "forcible detainer actions were eventually stayed" and the case was referred to an arbitrator for resolution "of two threshold questions: (1) was there an actionable breach of the Modified Lease by the Port of Louisville, and (2) was the Modified Lease a valid and enforceable agreement." *Id.* at 7. The arbitrator concluded that "the Modified Lease was valid and enforceable under Kentucky law" and that Port of Louisville "committed no material violations" of the Modified Lease. *Id.* The circuit court judge upheld the arbitrator's award. [DE 6-1 at 39]. Port of Louisville's counterclaims have not yet been arbitrated. [DE 12 at 111].

In May 2020, Port of Louisville filed suit in this Court, asserting against Watco and Bouvette claims of tortious interference with contractual relationship and business relations, civil conspiracy, and defamation, and demanding:

    1. Judgment in its favor against Watco and Maria Bouvette for compensatory and punitive damages in an amount to be determined at trial;

    2. A temporary and permanent injunction enjoining Watco and Maria Bouvette from taking any further action to interfere with Port of Louisville's contracts and business relationships;

    3. Pre-judgment and post-judgment interest in an amount equal to the maximum

allowable under the law;

4. An award of reasonable attorneys' fees and costs;

5. A trial by jury on all such triable issues; and

6. Any and all other relief to which Port of Louisville may be entitled.

[DE 1 at 13-14].

## II. STANDARD

Federal courts lack subject matter jurisdiction over claims that are not yet ripe for judicial review. *Norton v. Ascroft,* 298 F.3d 547, 554 (6th Cir.2002). For that reason, a defendant can move to dismiss a plaintiff's claim for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) if the claim lacks ripeness. *Bigelow v. Mich. Dep't of Natural Res.,* 970 F.2d 154, 157 (6th Cir.1992). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir.2004).

## III. DISCUSSION

**A. Motion to Dismiss**

Watco argues that Port of Louisville's claims are not ripe and are barred by the doctrine of issue preclusion. [DE 6; DE 12].

1. <u>Ripeness</u>

Watco argues that Port of Louisville's claims are not ripe for adjudication:

> First, if Port of Louisville recovers from Riverport Authority on its counterclaim in the State Court Action, a substantial portion of the alleged damages sought herein will not arise. Second, and for the same reason, until the arbitrator or judge in the State Court Action rules on Port of Louisville's counterclaim, a factual dispute exists over the nature and amount of Port of Louisville's alleged damages, such that

> the claim in this action will be insufficiently developed to allow adjudication on the issue of recoverable damages. Third, the parties and this Court have an interest in not fragmenting Port of Louisville's claims.

[DE 6-1 at 40].

Port of Louisville disagrees: "[Port of Louisville's] damages have already arisen. The fact that it may collect some of those damages from one of WATCO's co-conspirators does not let WATCO off the hook." [DE 11 at 104 (capitalization in original)].

"Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review." *Nat'l Rifle Ass'n v. Magaw,* 132 F.3d 272, 280 (6th Cir. 1997). To evaluate ripeness, courts consider three factors: "(1) the likelihood that the harm alleged by the plaintiff will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied." *Insomnia Inc. v. City of Memphis,* 278 Fed. App'x 609, 612 (6th Cir. 2008) (internal alterations omitted) (quoting *Warshak v. United States,* 490 F.3d 455, 467 (6th Cir. 2007)). A "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States,* 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–81 (1985)).

Port of Louisville's claims against Watco are ripe. Port of Louisville alleges that Watco's tortious actions have harmed its business relationships with approximately a dozen businesses, including Riverport. [DE 1 at 10-13]. Port of Louisville asserts claims against Watco for tortious interference with contractual relationship and business relations, civil conspiracy, and defamation, and counterclaims against Riverport for declaration of rights, accounting, breach of covenant of good faith and fair dealing, and injunctive relief. [DE 1 at 10-13; DE 6-2 at 54-58]. Port of

Louisville's claims against Watco—based on the harm caused by Watco's alleged tortious conduct—are not dependent on the outcome of its arbitration with Riverport because its counterclaims against Riverport stem from Riverport's alleged violations of the Modified Lease, whereas its claims against Watco are based on Watco's alleged tortious activity. [*Compare* DE 1 at 10-13 *with* DE 6-2 at 54-58]; *see e.g.*, *C.C. Forbes, LLC v. Axis Surplus Ins. Co.*, No. 2:16-CV-94, 2016 WL 10706290, at *4 (S.D. Tex. May 31, 2016) ("Axis argues that Forbes' claim is unripe because it has not yet suffered any actual damages. However, the inability to quantify damages because the underlying claim has not yet been litigated to judgment and liability for indemnity under the policy has not yet been determined does not negate the 'case or controversy' ripeness issue"); *Travelers Indem. Co. v. Northrup Grumman Corp.*, 416 F. Supp. 3d 290, 298 (S.D.N.Y. 2019) (finding that the matter was ripe and noting that "[s]imply because the allocation claim is styled as Travelers' seeking contribution from Century does not mandate sequential rather than parallel resolution of each insurer's coverage obligation"). Because Port of Louisville demands in the two cases different relief based on different causes of action, it is unclear to the Court how damages against Watco in this case depend on whether "Port of Louisville recovers from Riverport Authority on its counterclaim in the State Court Action." [DE 6-1 at 40]; *see Energy & Env't Cabinet v. Johnson*, No. 2020-CA-0038-MR, 2021 WL 650279, at *5 (Ky. Ct. App. Feb. 19, 2021) ("[W]here two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages") (internal quotation marks and citation omitted); *accord Jones by & through Jones v. IC Bus, LLC*, No. 2018-CA-1440-MR, 2020 WL 5987523, at *5 (Ky. Ct. App. Oct. 9, 2020). Port of Louisville's claims against Watco do not rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all."

*Texas,* 523 U.S. at 300 (internal quotation marks omitted).   Instead, they rest on harm that was allegedly—and already—caused by Watco's tortious actions in this case.  *See Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007)  ("The doctrine of ripeness focuses on the conduct of the defendant to determine whether the defendant's actions have harmed, are harming, or are about to harm the plaintiff").   As a result, the Court declines to find that Port of Louisville's claims against Watco are not ripe.

    2.    <u>Issue Preclusion</u>

Watco argues that "[i]n this action, [Port of Louisville] alleges specific incidences of harm to its contract and business relationship with Riverport Authority.  However, whether [Port of Louisville] suffered damages as a result its contract and business relationship with Riverport Authority is speculative until the arbitrator or the judge determines there has been a harm to that relationship or until those claims have been otherwise finally adjudicated." [DE 12 at 111].  Watco also argues that, as a result, "[i]f the arbitrator determines Port of Louisville has not been harmed in its business relationship with Riverport Authority, Port of Louisville would be precluded from relitigating that issue in this action."  *Id.* at 111-12.  Port of Louisville counters: "Port of Louisville's business relationship with Riverport Authority is just one of almost a dozen business relationships alleged to have been harmed in this case.  Further, based on the Kentucky case law cited below, Arbitrator Hays does not have authority to determine that WATCO interfered with Port of Louisville's business relationships and enter an award of damages against WATCO."  [DE 15 at 136].

A federal court deciding whether to apply issue preclusion to an earlier state court judgment must first examine the issue preclusion law of the state in which the judgment was rendered.  *See*

7

*Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Here, that is Kentucky law. The Kentucky Supreme Court has held that:

> For issue preclusion to operate as a bar to further litigation, certain elements must be found to be present. First, the issue in the second case must be the same as the issue in the first case. *Restatement (Second) of Judgments* § 27 (1982). Second, the issue must have been actually litigated *Id.* Third, even if an issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in that action. *Id.* Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment.

*Yeoman v. Com., Health Pol'y Bd.*, 983 S.W.2d 459, 465 (Ky. 1998).

Watco has failed to establish that issue preclusion[1] bars Port of Louisville's claims in this suit. First, under Kentucky law, it appears as though the arbitrator's decision can have no preclusive effect on Port of Louisville's claims against Watco in this case. *See Paducah Health Facilities L.P. v. Newberry*, 2015 WL 6780406, *6 (Ky. App. Nov. 6, 2015) ("Paducah Health's concerns regarding *res judicata* and collateral estoppel are unsound. To assert either doctrine requires a final judgment from a *court,* not an arbiter, on the merits. Arbitration cannot bar claims that fall outside the scope of the arbitration, nor are courts obliged to defer to an arbitration award that exceeded its authority") (emphasis in original) (citing *Moore v. Commonwealth,* 954 S.W.2d 317, 318 (Ky.1997)). Second, even if the arbitrator's decision could bind Port of Louisville, Watco has not sufficiently explained how the issues in this case (which are related to Watco's and Bouvette's tortious actions) are the same as those being litigated in the arbitration (which are related to Port of Louisville's and Riverport's lease agreement). And third, even if the issues were the same, the arbitrator apparently has not yet determined whether Port of Louisville has "been harmed in its business relationship" with Riverport and, as such, the issue has not been litigated in

---

[1] Watco addressed none of the factors discussed in *Yeoman*.

the first case. As a result, the Court declines to find that issue preclusion bars Port of Louisville's claims against Watco.

## IV. CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Watco's Motion to Dismiss [DE 6] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

March 30, 2021

Copies to:     Counsel of record