UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NEW ALBANY MAIN STEET     Plaintiff
PROPERTIES D/B/A PORT OF
LOUISVILLE

v.     Civil Action No. 3:20-cv-343-RGJ

WATCO COMPANIES, LLC, ET AL.     Defendants

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Defendant Maria Bouvette ("Bouvette") moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [DE 21]. Plaintiff New Albany Main Street Properties d/b/a Port of Louisville ("Port of Louisville") responded in opposition [DE 22] and Bouvette replied [DE 24]. The matter is ripe. For the reasons below, the Court **DENIES** Bouvette's Motion to Dismiss [DE 21].

### I. BACKGROUND

Port of Louisville operates Louisville's shipping center where goods are loaded for transport on the Ohio River or unloaded for distribution by land. [DE 22 at 182]. In 2009, Port of Louisville and the Louisville and Jefferson County Riverport Authority ("Riverport Authority") executed a lease where Port of Louisville agreed to operate the Riverport Authority's port facility ("Port Facility"). [*Id.*]. In 2016, Port of Louisville again successfully bid to be the operator of the Port Facility. [*Id.*]. The parties executed a modified lease ("Modified Port Facility Lease"), which runs until 2035. [*Id.*]. Bouvette was appointed by the Mayor of Louisville as the executive director of Riverport Authority. [DE 21 at 162].

Port of Louisville alleges that one of its competitors, Watco Companies, LLC ("Watco"), began secret negotiations with Bouvette and Riverport Authority to remove and replace Port of

Louisville as operator of the Port Facility. [DE 1 at 4]. In May 2019, Port of Louisville received a default notice alleging that it was in default of the Modified Port Facility Lease due to a number of deficiencies. [DE 22 at 182]. Riverport Authority sued to compel compliance with the Modified Port Facility Lease. [*Id.* at 183]. As part of their counterclaims, Port of Louisville argued that Watco and Bouvette tortiously interfered with many of its existing and prospective contract and business relationships when they tried to remove Port of Louisville. [*Id.* at 182]. Port of Louisville's counterclaims were sent to arbitration in Jefferson Circuit Court. [DE 21 at 162].[1]

Port of Louisville filed suit in this Court, asserting against Watco and Bouvette claims of tortious interference with contractual relationship and business relations, civil conspiracy, and defamation. [DE 1 at 13–14]. Bouvette moved to dismiss this action arguing that she is covered by sovereign immunity because Riverport Authority is "an element of state government under the overall control of the Commonwealth's Transportation cabinet." [DE 21 at 161]. Port of Louisville argues that Bouvette is not entitled to protection under sovereign immunity or governmental immunity because Riverport Authority is a private entity. [DE 22 at 181]. Before sending Port of Louisville's claims to arbitration, the Jefferson County Circuit Court held that Riverport Authority was not subject to sovereign immunity or governmental immunity. *See Louisville & Jefferson Cnty. Riverport Auth. v. New Albany Main St. Props., LLC*, No. 19-CI-003564 (Ky. Cir. Ct. Sept. 20, 2019), DE 34-1. The Court ordered Port of Louisville to file a copy of the unpublished opinion [DE 33], which it filed on March 21, 2022 [DE 34]. This opinion is not preclusive since issues related to immunity were also moved to arbitration pursuant to an arbitration agreement between the parties. [DE 21-1 at 170].

---

[1] The Kentucky Court of Appeals affirmed an arbitration award and the Jefferson Circuit Court's order confirming the arbitration award in Port of Louisville's favor. *See Louisville & Jefferson Cnty. Riverport Auth. v. New Albany Main St. Props., LLC*, No. 2020-CA-1426-MR, 2022 WL 496003 (Ky. App. Feb. 18, 2022).

2

## II. BOUVETTE'S MOTION TO DISMISS

Bouvette moves to dismiss Port of Louisville's action under Rule 12(b)(6). [DE 21 at 163]. She argues that because Riverport Authority is protected by sovereign immunity she is also protected by immunity as an employee. [*Id.*]. Bouvette also argues that her actions are subject to immunity because Riverport Authority is entitled to governmental immunity. [*Id.* at 164–66]. Finally, Bouvette claims that she is entitled to immunity under the Claims Against Local Government Act ("CALGA"). [*Id.* at 166].

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### B. Analysis

#### 1. Sovereign Immunity

Bouvette argues that as a state agency, Riverport Authority is entitled to sovereign immunity. [DE 21 at 163]. Sovereign immunity "precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). The state, counties, and consolidated local governments are entitled to sovereign immunity. *See Comair, Inc. v. Lexington-Fayett Urb. Cnty. Airport Corp.*, 295 S.W.3d 91, 94 (Ky. 2009). By extension, this immunity from suit also includes "public officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought." *Yanero*, 65 S.W.3d at 518 (citing *Alden v. Maine*, 527 U.S. 706, 756 (1999)). Therefore, for Bouvette to be entitled to sovereign immunity, Riverport Authority must also be covered by sovereign immunity. *See id.*

Riverport Authority is described as a "body politic and corporate with the usual corporate attributes." KY. REV. STAT. ANN. § 65.520. Its executive director, Bouvette, was appointed by the Mayor of Louisville, and it is subject to oversight by the Kentucky Transportation Cabinet. [DE 21 at 162]. Riverport Authority is not considered a state, county, or consolidated local government. *See Comiar*, 295 S.W.3d at 94. When an entity like Riverport Authority is more corporate that governmental, it is not protected by sovereign immunity. *See, e.g., Transit Auth. of River City v.*

4

*Bibelhauser*, 432 S.W.3d 171 (Ky. App. 2013). Sovereign immunity is meant to provide immunity for "legislators in the performance of their legislative functions, . . . judges for all their judicial acts, . . . and prosecutors with respect to the initiation and pursuit of prosecutions." *Kentucky State Univ. v. Mucker*, No. 2018-CA-001817-MR, 2020 WL 1332976, at *3 (Ky. App. March 20, 2020). Riverport Authority does not meet the qualifications for sovereign immunity because it is a body politic and corporate instead of a state, county, or consolidated local government. *See Comair*, 295 S.W.3d at 94. Therefore, Riverport Authority cannot extend the protections of sovereign immunity to Bouvette. *See Yanero*, 65 S.W.3d at 518. While oversight by the Kentucky Transportation Cabinet and appointment of the executive director by the Mayor of Louisville are persuasive facts, they are not enough given Riverport Authority's organic statute. *See Louisville & Jefferson Cnty. Riverport Auth.*, No. 19-CI-003564, at *5, DE 34-1 at 248. Bouvette's Motion to Dismiss [DE 21] based on sovereign immunity is **DENIED**.

   2. **Governmental Immunity**

Bouvette is not entitled to governmental immunity. Bouvette argues that Riverport Authority is an agency entitled to governmental immunity, which would extend to her acts as executive director or Riverport Authority. [DE 21 at 164–66]. "Kentucky law distinguishes between sovereign immunity and governmental immunity and, as a result, draws a distinction between the protections afforded state and county governments as opposed to those afforded governmental agencies or entities." *Parking Auth. of River City, Inc. v. Bridgefield Cas. Ins. Co.*, 477 S.W.3d 598, 699 (Ky. App. 2015). Kentucky law extends governmental immunity to "its

5

cabinets, departments, bureaus, and agencies and its officers, agents, and employees while acting in the scope of their employment."[2]

The Kentucky Supreme Court has defined a two-prong test for determining whether an agency or an entity is entitled to governmental immunity. *Comair,* 295 S.W.3d at 91. The court must decide "whether the entity in question was created by the state or a county, as opposed to a city, and then whether the functions the entity performs are integral to state government." *Coppage Const. Co. v. Sanitation Dist. No. 1*, 459 S.W.3d 855, 860 (Ky. 2015) (citing *Comair,* 295 S.W.3d at 99). "[T]he second *Comair* prong addresses two elements: whether the entity's function is 'governmental' as opposed to proprietary, and whether it is a matter of 'statewide' concern." *Id.* at 862. A proprietary function is typically engaged in by businesses or corporations and will likely involve conducting an activity for profit. *Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 804 (Ky. 2009). "If an entity tends to do the work of a state, but on a local scale, that fact weighs in favor of immunity." *N. Ky. Area Planning Comm'n v. Cloyd*, 332 S.W.3d 91, 96 (Ky. App. 2010). However, governmental immunity is less likely if the entity's business primarily addresses local concerns and interests. *Id.*

Port of Louisville concedes that Riverport Authority satisfies the first prong on the *Comair* test. [DE 22 at 188]. Riverport Authority was established by the City of Louisville. *See* KY. REV. STAT. ANN. § 65.520. The Louisville/Jefferson County Metropolitan Government became the adoptive parent of the Riverport Authority when the city and county governments merged. *See Comair*, 295 S.W.3d at 100 (discussing the Lexington and Fayette County government merger).

---

[2] KY. REV. STAT. ANN. § 49.060. Although the statute may reference sovereign immunity, the Kentucky Court of Appeals has recognized that immunity applied to agencies and entities is governmental immunity. *Mucker*, 2020 WL 1332976, at *3 n. 3 ("The legislature's choice of nomenclature aside, the sovereign's creation of a political subdivision or office results in the created entity's immunity, which the courts denominate variously as governmental immunity or qualified official immunity as discussed in our jurisprudence.").

Consolidated local governments are entitled to sovereign immunity as if they were still considered counties. *See Lexington-Fayette Urb. Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004). As the creation of a consolidated local government, Riverport Authority satisfies the first prong of the *Comair* test.

Under the second prong of *Comair*, the Court must examine whether Riverport Authority's function is governmental or proprietary. *Coppage Const. Co.*, 459 S.W.3d at 860. Riverports, such as the Riverport Authority, are supervised by the Kentucky Transportation Cabinet. *See* KY. REV. STAT. ANN. § 65.520(3). Riverport Authority was created "to establish, maintain, operate, and expand necessary and proper riverport and river navigation facilities, and to acquire and develop property, or rights therein within the economic environs, the home county, or any county adjacent thereto, of the riverport or proposed riverport to attract directly or indirectly reiver-oriented industry." *Id.* § 65.530. Riverport Authority also leases a port facility to private companies, contracts with private companies for use of the port facility, and establishes and collects fees for use of the port facility. *Id.* These are mainly proprietary functions that include "an element of conducting an activity for profit." *Jacobi v. Holbert*, 553 S.W.3d 246, 255 (Ky. 2018). Riverport Authority could be described as a commercial shipping operation. *See, e.g.*, *Louisville & Jefferson Cnty. Riverport Auth.*, No. 19-CI-003564, at *6, DE 34-1 at 249. It does not "facilitate statewide transit, legislate, administrate, or otherwise predominately serve state-level concerns or carry out functions 'integral to state government.'" *Bibelhauser*, 432 S.W.3d at 175. Instead, Riverport Authority is developing and leasing the port facility to private parties for profit, including Port of Louisville. Riverport Authority's involvement in activities for profit weights in favor of a proprietary function instead of a governmental function. *Caneyville Volunteer Fire Dept.*, 286 S.W.3d at 804.

Bouvette argues that Riverport Authority is a matter of statewide concern. [DE 21 at 165–66]. Citing *E.M. Bailey Distrib. Co., Inc. v. Conagra*, 676 S.W.2d 770 (Ky. 1984), Bouvette claims that Riverport Authority is governmental in nature. [DE 21 at 166]. However, *Conagra* is distinguishable. In *Conagra*, the Kentucky Supreme Court examined whether riverports must engage in competitive bidding, not whether riverports were entitled to sovereign immunity or governmental immunity. 676 S.W.2d at 771. Because the Court did not examine immunity, it also did not apply the two-prong *Comair* test. Riverport Authority is not a statewide concern like the Airport Board in *Comair*. The airports provided by the Airport Board, maintained the primary means of accessing airspace. *Comair*, 295 S.W.3d at 100. Here, there is no similar assertion that Riverport Authority maintains primary access to Kentucky's waterways. Riverport Authority fails the second prong of the *Comair* test because it does not perform a function integral to state government and its function is primarily proprietary. *Id.* at 98. As a result, Riverport Authority is not entitled to governmental immunity. *Id.* By extension, Bouvette is not entitled to governmental immunity because she is not employed by an entity that may extend that immunity to her. *See Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 718 (Ky. 2007). Bouvette's Motion to Dismiss [DE 21] based on governmental immunity is **DENIED**.

### 3. Immunity Under CALGA

Bouvette is not entitled to immunity under CALGA. Bouvette argues that CALGA extends an additional layer of immunity protection to government agencies, like Riverport Authority, which extends to Bouvette. [DE 24 at 209]. Port of Louisville contends that CALGA does not provide Bouvette with additional immunity rights. [DE 22 190–91]. Under CALGA, Kentucky law bars any tort action against a local government for damages allegedly caused by "[a]ny act or omission of any employee, while acting within the scope of his employment or duties." KY. REV.

STAT. ANN. § 65.2001(1)(b). However, CALGA neither expands nor contracts the scope of immunity applicable to local governments and its employees. *See Ashby v. City of Louisville*, 841 S.W.2d 184, 186–87 (Ky. App. 1992) (holding CALGA codified an already judicially recognized exception to the rule of municipal tort liability); *Griffith v. Flinn*, No. 2002-CA-000389-MR, 2003 Ky. App. LEXIS 161, at *6 (Ky. App. June 27, 2003) ("It was not the intent of the drafters of [CALGA] to abrogate or expand the immunity afforded to local governments by either the constitution or the common law.").

Based on the Kentucky Court of Appeals' interpretation, Riverport Authority is provided no more immunity protections under CALGA than it would be entitled under the laws of the Commonwealth. *See Griffith*, 2003 Ky. App. LEXIS 161, at *6. As explained above, Riverport Authority is not a state, county, or consolidated local government that is entitled to Sovereign immunity. Additionally, Riverport Authority failed the second prong of the *Comair* test, which would have entitled it to governmental immunity. Because Riverport Authority is not protected by immunity, Bouvette is also unable to avail herself to the protections of sovereign immunity or governmental immunity. Although CALGA does extend immunity to employees of local government who are acting within the scope of their duties, KY. REV. STAT. ANN. § 65.2001(1)(b), Riverport Authority is not included with the scope of CALGA. Therefore, Riverport Authority cannot extend immunity protection to Bouvette under CALGA. Bouvette's Motion to Dismiss [DE 21] under CALGA is **DENIED**.

### III. <u>CONCLUSION</u>

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. Bouvette's Motion to Dismiss [DE 21] based on sovereign immunity is **DENIED**;

2. Bouvette's Motion to Dismiss [DE 21] based on governmental immunity is **DENIED**;

3. Bouvette's Motion to Dismiss [DE 21] under CALGA is **DENIED.**

Rebecca Grady Jennings, District Judge
United States District Court

March 28, 2022


Copies to:    Counsel of record