UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NEW ALBANY MAIN STEET PROPERTIES D/B/A PORT OF LOUISVILLE — Plaintiff

v. — Civil Action No. 3:20-cv-343-RGJ

WATCO COMPANIES, LLC, ET AL. — Defendants

* * * * *

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendant Maria Bouvette's ("Bouvette") and Defendant Watco Companies, LLC's ("Watco") (collectively "Defendants") motion to exclude proposed expert testimony. [DE 134]. For the reasons below, the motion to exclude proposed expert testimony [DE 134] is **GRANTED IN PART AND DENIED IN PART**.

## I. DISCUSSION

Plaintiffs offer the expert opinion of Woodward to calculate damages resulting from the alleged tortious actions of Defendants in attempting to remove Port of Louisville from the Port Facility. [*see* DE 134-2, Woodward Supplemental Expert Report]. Woodward is a certified public accountant with Dean Dorton Allen Ford, PLLC ("Dean Dorton"). [DE 134-2, at 923]. Woodward also holds a certification in financial forensics. [*Id.*]. Woodward received her bachelor's degree in philosophy in 1989 and her Master of Business Administration with accounting concertation in 1994. [*Id.*] She worked for KPMG, LLP in assurance services from 1994 to 2000, and has been with Dean Dorton since 2000. [*Id.*]. She has provided expert testimony in at least twelve cases in the four years before December 2, 2025 (date of supplemental disclosure). [*Id.* at 923-24].

Woodward calculated Port of Louisville's alleged damages for: (1) lost profits due to Defendants' attempt to remove Port of Louisville from the Port Facility; (2) reduced revenue due to Defendants' unilaterally binding Port of Louisville through contract negotiations with ELG Metals to a reduced barge unloading fee; (3) legal fees incurred by Port of Louisville; and (4) prejudgment interest on each of these items. [DE 134-2 at 906-20].

Defendants move to exclude Woodward's testimony, arguing that her testimony "is unreliable and should be inadmissible," and "would be more prejudicial than probative, and confuse the issues and mislead the jury . . ." [DE 134 at 858].

A. Standard

The admissibility of expert testimony is set forth in Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." 509 U.S. 579, 597 (1993); *see also Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (alteration and internal quotation marks omitted).

> Under Rule 702 of the Federal Rules of Evidence, a proposed expert's opinion is admissible . . . if the opinion satisfies three requirements. First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable.

*Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008)).

The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). The Court must determine whether the witness is qualified to offer an opinion on the specific area of expertise. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at *5 (N.D. Ohio Aug. 8, 2005) ("An expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge.").

> Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact.

*Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

Along with expert qualifications, "[t]he Court must determine whether evidence proffered under Rule 702 'both rests on a reliable foundation and is relevant to the task at hand.'" *Powell v. Tosh*, 942 F. Supp. 2d 678, 686 (W.D. Ky. 2013), *adhered to on denial of reconsideration*, No. 5:09-CV-00121-TBR, 2013 WL 1878934 (W.D. Ky. May 3, 2013) (quoting *Daubert*, 509 U.S. at 597). To assess reliability, the court must consider "whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. To assist with this determination, the Supreme Court in *Daubert* laid out several factors for the courts to consider. *Daubert*, 509 U.S. at 592–94. These

factors include: "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94). The test of reliability is "flexible," and the *Daubert* factors do not constitute a "definitive checklist or test," but may be tailored to the facts of a particular case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1990) (citing *Daubert*, 509 U.S. at 593).

Courts have "stressed, [] that Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case . . . [i]n some cases . . . the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience." *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding the *Daubert* factors "unhelpful" in a case involving "expert testimony derived largely from [expert's] own practical experiences throughout forty years in the banking industry [because] [o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation") (internal citations omitted). "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.*

B. Analysis

Defendants assert several grounds for exclusion.[1] [DE 134]. First, Defendants argue Woodwards' opinions are unreliable because she merely assumes causation and does "not offer[] any opinions on whether or how [] Bouvette or Watco had actually caused any damages." [DE 134 at 859]. Second, Defendants assert Woodward's opinions are unreliable, challenging the

[1] Defendants do not challenge Woodward's qualifications. [DE 134].

information on which her opinions are based, its methodology, and lack on consideration of mitigation of damages. Finally, Defendants challenge the relevance of Woodward's opinions.

*I. Assumption of Causation*

Defendants assert that Port of Louisville has not provided evidence to support its claim that Watco or Bouvette is responsible for Mid-Continent Coal & Coke's ("Mid-Continent") decision to locate its facility somewhere other than Port of Louisville. [DE 134 at 871]. They also assert the proof demonstrates Mid-Continent chose a different location for other reasons. [*Id.*] Defendants argue that the lack of support for liability in Port of Louisville's claim involving Mid-Continent is an example of how Woodward failed to consider other causes for the damages she calculated. [DE 134 at 867]. Defendants' expert similarly critiques Woodward's opinions as "appear[ing] to assume that Defendants' Alleged Acts are the cause of the damages she quantifies, without considering the potential that other reasons may have contributed to the purported harm." [DE 134-5, Cornelius Expert Witness Report, ¶ 33 at 990].

Federal Rule of Evidence 703 provides that an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed, and that such facts or data need not be admissible for the opinion to be admitted. Fed. R. Evid. 703. In *Cellmark, Inc. v. Webster*, a federal court sitting in the Eastern District of Kentucky rejected the argument that a damages expert improperly assumed that the defendant's conduct caused the plaintiff's decline in sales, noting that it is appropriate for a damages expert to assume liability and that damages expert opinions are dependent on the assumption that liability has been proven. *Cellmark, Inc. v. Webster*, No. 2:24-CV-00181-SCM-CJS, 2026 WL 1510362, at *8, n.2 (E.D. Ky. May 29, 2026) (citing *Kirkbride v. Kroger Co.*, 349 F.R.D. 160, 177 (S.D. Ohio 2025)); *Rhoads Indus., Inc. v. Shoreline Found.*, Nos. 15-921, 17-266, 2021 WL 2778562, at *30 (E.D. Pa. July 2, 2021); *Dorman Prods.,*

*Inc. v. Paccar, Inc.*, 201 F. Supp. 3d 663, 690 (E.D. Pa. 2016), as amended (Oct. 17, 2016))). Furthermore, even the AICPA practice aid cited by Defendants in support of their motion to exclude Woodward, notes that it may be appropriate for an expert to assume causation in certain circumstances and assume plaintiff will establish causation. [DE 134-5 at 1125-26].

Woodward is not offering an opinion on causation. It will be Port of Louisville's burden at trial to present evidence in support of causation. If the jury finds Port of Louisville fails to prove causation on its liability claims, then they will not reach the question of damages, for which Woodward offers opinions. Woodward is not required to independently establish causation to offer an opinion on damages, and her opinion is conditioned on Port of Louisville establishing liability, including causation. Defendants' motion to exclude Woodward on this basis of assumed causation is **DENIED**.

*II. Reliability*

Woodward used a lost-profits methodology in formulating her opinions by identifying lost revenue by customer, applying historically derived profit margin, projecting losses over the remaining lease term, and discounting to present value using a build-up method discount rate. [DE 134-2, supplemental expert report, at 910-11]. Defendants maintain Woodward's opinions are unreliable first because she failed to properly disclose the information relied on in forming her opinions and relied on "faulty assumptions" in forming her opinions. [DE 134 at 859-60, 864]. Next, Defendants argue her methodology is unreliable, asserting Woodward's calculations of lost profits for potential client Mid-Continent demonstrate "flaws" in Woodward's opinions and argue these "flaws" apply to Woodward's calculations of lost profits for all the potential clients. [DE 134 at 873]. Finally, Defendants argue Woodward failed to consider whether Port of Louisville could have mitigated its losses. [DE 134 at 878]. In response, Port of Louisville notes that Woodward

applies widely accepted methodology in calculating damages, reviewed a wide range of supporting materials to determine the damages, and was deposed at length about every aspect of her analysis. [DE 138 at 2831-32]. Port of Louisville further argues that the criticisms of Woodward's opinions raised by Defendants should be addressed through cross-examination, not exclusion. [*Id*].

To assess reliability, the court must consider "whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. In preparing her report, Woodward reviewed Port of Louisville's financial statements, QuickBooks records, tax returns, customer proposals, invoices, industry date, reference materials (Kroll Cost of Capital Navigator), Federal Reserve yield data, and considered her knowledge and professional experience as an accountant. [DE 134-2, supplemental expert disclosure, at 903, 921-22]. She also had discussions with Port of Louisville's management and made site visits on November 20, 2020 and November 14, 2025. [*Id*. at 922].

a. Information from Site Visits

Defendants maintain that Woodward relied on information she did not properly disclose; specifically, conversations with Port of Louisville management for which she produced no notes or other memorializing records. [DE 134 at 859-60]. Defendants maintain that Woodward's supplemental disclosure "identifies only two '[d]iscussions with management and site visits (November 20, 2020 and November 14, 2025).'" [DE 134 at 864].

As an initial matter, Woodward's disclosure does identify her participation in multiple discussions and two site visits on specific dates referenced in parenthesis. [DE 134-2, supplemental disclosure at 922]. Defendants asked Woodward about these discussions in

Woodward's deposition, and she explained she had two on site visits with Greg Cantrell ("Cantrell"),[2] and that "Missy[3] would talk with him some. If she had questions about information, she would call him. So I would say between 10 and 20 times. And that's for Dean Dorton, not just me." [DE 134-3, Woodward Dep. at 927]. She further explained they primarily talked with Cantrell's daughter, who is an accountant for Port of Louisville, to understand the accounting and that she relied on those conversations "in terms of having an understanding of the business," and explained "[t]hat's one reason I wanted to list it on my information considered because I thought they were an important part of my work." [DE 134-3 at 927-28, DE 138-1, Woodward Dep at 2868–69].

Under Fed. R. Civ. P. 26(a)(2)(B) retained expert witnesses must produce a written report stating the opinions they intend to express, the basis for those opinions, the facts or data considered in forming them, and any exhibits used to support them. The parties are under a continuing duty to supplement those expert reports in accordance with Rule 26(a)(2)(E). Fed. R. Civ. P. 26(a)(2)(E). Rule 37(c)(1) requires exclusion of witnesses and evidence not disclosed in accordance with Fed. R. Civ. P. 26(a) or (e) unless the party can show that the failure to timely disclose was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

When an expert testifies at a deposition in conjunction with their report, the disclosure requirement "presents a more nuanced issue." *Crouch v. Honeywell Int'l, Inc.*, No. 3:07-CV-638-DJH, 2015 WL 13547448, at *5 (W.D. Ky. Nov. 19, 2015). Rule 26(b)(4)(A) permits the deposition of a person identified as an expert to be taken after the report has been served. Indeed, "[t]he reason for requiring that an expert report be provided before a deposition is taken is so the

[2] Greg Cantrell is one of the owners of Port of Louisville.

[3] Woodward testified that she consulted with two credentialed colleagues in Dean Dorton's valuation department, Missy DeArk and John Herring. [DE 138-1, Woodward Dep. at 2870, 2882–83].

opposing party can use the report to examine the expert at the deposition." *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1413 (11th Cir. 2011). Additionally, the expert may expound on his or her opinions during the deposition. *See Thompson v. Doane Pet Care Co*., 470 F.3d 1201, 1203 (6th Cir. 2006) ("The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report.").

As an initial matter, Defendants have not moved to compel disclosure of the notes or sanctions for failure to disclose them under Rule 37. However, if they had, the lack of disclosure was harmless as Woodward disclosed her discussions and her attendance at two site visits in her supplement disclosure on December 2, 2026, and was deposed about information received from these discussions and site visits in January 2026. In other words, Defendants "had all the information relevant to the [nondisclosure issue] . . . . [and] had a full opportunity during [expert's] deposition to question [her] . . . ." *Jordan v. City of Cleveland*, 464 F.3d 584, 601, n.22 (6th Cir. 2006). Further, as discussed below, the information received by Woodward and her Dean Dorton colleagues in these discussions/site visits was not blindly relied on, but independently verified. Thus, the Court cannot find Woodward's opinion unreliable under Rule 702 for an alleged failure to produce notes from discussions or a site meeting.

b. Methodology

Defendants argue that Woodward blindly parroted information from the client in forming her opinions, but as demonstrated by her deposition testimony and supplemental report, she independently computed gross profit margin from Port of Louisville's financial statements and QuickBooks, and cross-checked that data against the tax returns [DE 138-1, Woodward Dep. at 2868-69; DE 134-2, supplemental expert report at 909-10], calculated the discount rate from third party data [DE 134-2 at 909-10], projected loss of customers through her own methodology [DE

134-2 at 907-10], and reviewed independent sources in forming her opinions [DE 134-2 at 907-10, 20-21]. This is not Woodward impermissibly offering her client's opinion as her own "without revealing or apparently even evaluating the bases for those [opinions];" instead, she incorporated "the information supplied to [her] into [her] underlying facts, independently review[ed] the information, and then formulat[ed], with calculations consistent with [her] expertise, an opinion . . ." *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014); *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-CV-00341-SEB-DM, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009). The Court finds Woodward's incorporation of conversations with her client into her opinions reliable.

As noted above, Woodward used a lost-profits methodology in formulating her opinions by identifying lost revenue by customer, applying historically derived profit margin, projecting losses over the remaining lease term, and discounting to present value using a build-up method discount rate. [DE 134-2, supplemental expert report, at 910-11]. Under the flexible approach used to determine reliability, the Court finds that this approach is reliable. Defendants' expert, Cornelius, does not assert that Woodward should have used a different methodology, but disputes the inputs that Woodward used. [DE 138-2, Cornelius Dep. at 2899-2900].

Defendants maintain that Woodward overlooked variable or incremental expenses in calculating lost profits [DE 134 at 874], erroneously assumed an annual three percent increase in pricing [DE 134 at 875], fails to reliability apply a discount factor for risks associated with Port of Louisville's business operations [DE 134 at 875], applied the discount rate to the wrong timeframe [DE 134 at 876], and failed to consider whether Port of Louisville could have mitigated its losses [DE 134 at 878]. "The question of whether the expert's opinion is accurate in light of his use of certain data goes to the weight of the evidence, not to its admissibility." *In re Scrap Metal Antitrust*

*Litig*., 527 F.3d at 531-32. Challenges to Woodward's inputs go to weight her opinions should be given, not admissibility, and Defendants will have a full opportunity to cross-examine Woodward at trial. Defendants' motion to exclude Woodward on the basis of methodolgy is **DENIED.**

c. Mitigation of Damages

Defendants assert Woodward's opinion is unreliable because she did not consider whether Port of Louisville mitigated its damages. [DE 134 at 878-79]. The party "claiming a failure to mitigate has the burden of proof on that issue." *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, 494 F. App'x 561, 572–73 (6th Cir. 2012) (citing *Fifth Third Bank v. Waxman*, 726 F.Supp.2d 742, 751 (E.D. Ky. 2010)). Under Kentucky law, 'a plaintiff's duty to mitigate 'is not absolute; recovery is diminished only to the extent that the plaintiff fails to mitigate the damages as they would be mitigated by an ordinary, reasonable person under similar circumstances.'" *Id*. (citing *Morgan v. Scott*, 291 S.W.3d 622, 641 n. 49 (Ky. 2009)).

Because Defendants bear the burden of demonstrating at trial that Port of Louisville failed to mitigate its damages, the Court does not find Woodward's opinions unreliable under Rule 702 for not addressing mitigation. Port of Louisville further asserts that Woodward's opinions did appropriately distinguish, in calculating lost profits, whether revenue substituted for lost revenue and was thus mitigation versus whether Port of Louisville had the capacity to earn the revenue alongside the lost revenue, and thus would not qualify as mitigation. [DE 138 at 2860 citing DE 181-1, Woodward Dep. at 2892]. Regardless, whether an amount constitutes mitigation for purposes of damages is a factual dispute for the jury to resolve in determining damages, should it first find liability in favor of Port of Louisville. *Geyer v. Mankin*, 984 S.W.2d 104, 108, nn. 6-7 (Ky. App. 1998). Defendants' motion to exclude Woodward on the basis of reliability is **DENIED**.

*III. Relevance*

Defendants take issue with Woodward's calculation of Port of Louisville's legal fees as a component of its alleged damages, arguing that Kentucky law does not permit recovery of legal fees in this case, and thus, the inclusion of those damages is irrelevant for the trier of fact and will confuse the trier of fact. [DE 134 at 870]. Defendants further maintain Woodward's opinions as to lost profits for potential clients are irrelevant, will confuse the issues at trial, will likely mislead the jury, and be more prejudicial than probative, because Port of Louisville has failed to produce evidence to support the merits of its claims. [DE 134].

As discussed above, evidence is relevant if it assists the trier of fact in understanding the evidence or determining a material fact in question. *See Daubert*, 509 U.S. at 591–93. As the Sixth Circuit has explained, "[t]he relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017) (quoting *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196–97 (9th Cir. 2014)). "When there is a factual issue in dispute that expert testimony can clarify, there are limited grounds for rejecting the testimony of the expert witness." *Id.*

a. Legal Fees

Defendants argue that Woodward's calculation of the final element of Port of Louisville's alleged damages, its legal fees, which Woodward has tabulated through basic addition, should be excluded as a matter of law pursuant to Fed. R. Evid. 702 and 403. [DE 134 at 870]. They maintain this proposed testimony is irrelevant and likely to confuse the issues at trial because Kentucky law does not allow Port of Louisville to recover those fees given the absence of any contractual or statutory basis for such a claim. [*Id.*]. Port of Louisville maintains that whether legal fees are recoverable as damages is a question of law for the Court, not a motion challenging Woodward

under Rule 702. [DE 138 at 2861]. The Court agrees that this is a question of law. Defendants, however, do not challenge the reliability of Woodward's calculations of the legal fees, but instead this challenge goes to relevance.

Under the traditional American Rule, parties bear their own attorney's fees unless there is a contractual or statutory basis for such a claim and attorney's fees are not recoverable as an item of damages. *AnyConnect US, LLC v. Williamsburg* Place, LLC, 636 S.W.3d 556, 565 (Ky. App. 2021) ("In the absence of a statute or a contract specifically or expressly providing for their recovery, attorney's fees are not allowable as costs or recoverable as an item of damages."). Kentucky law allows an exception to the American Rule under an "equitable rule that an award of counsel fees is within the discretion of the court depending on the circumstances of each particular case." *Mo–Jack Distrib., LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 906 (Ky. App. 2015) (citing *Batson v. Clark*, 980 S.W.2d 566, 577 (Ky. App. 1988)). But, as the Kentucky Court of Appeals recently held, "the equitable exception does not alter the rule that attorney fees in this Commonwealth are not compensatory in nature. Because the exception is grounded in equity, the issue of whether attorney fees are recoverable is one exclusively within the discretion of the trial court and not properly submitted to the jury as an element of compensatory damages." *Mo–Jack Distrib*., 476 S.W.3d at 906.

As an initial matter, Woodward's supplemental report identifies legal fees for the present litigation. Port of Louisville neither argues in its response that it is entitled to recover legal fees for the present litigation, nor has the Court been presented with an agreement or statute authorizing legal fees for the present litigation. Thus, because under Kentucky law attorney's fees cannot be awarded as compensable damages and whether attorney's fees could be awarded as a matter of equity would only be a question for the Court, the Court **GRANTS** Watco's and Bouvette's motion

to exclude Woodward's testimony as to attorney's fees for the present litigation because it would not be relevant to the trier of fact.

That brings the Court to Port of Louisville's argument that it may recover legal fees from the state court litigation and arbitration under the claims of tortious interference with business relations and civil conspiracy. Port of Louisville argues the costs of its legal fees for a tortious litigation with Riverport Authority is foreseeable consequential harm flowing from the alleged conspiracy and tortious interference by Watco and Bouvette. [DE 138 at 2861]. Port of Louisville cites *Indiana Nat. Life Ins. Co. v. Butler,* 215 S.W. 949, 950 (1919) for the proposition that "the reasonable expenses of prior litigation caused by the wrongful act of another, including compensation for attorney's fees, may be recovered where the party incurring them acted in good faith in bringing his action or making defense." [DE 138 at 2862]. Port of Louisville further argues that the Sixth Circuit has applied this rule under Kentucky law in *Nilson-Newey & Co. v. Ballou*, 839 F.2d 1171, 1177 (6th Cir. 1988) (citing *Butler* and Restatement (Second) of Torts §914(2)). [*Id.*] Although neither case addressed claims of tortious interference with business relations or civil conspiracy, *Indiana Nat. Life Ins. Co. v. Butler*, established that reasonable expenses of prior litigation, including attorney fees, may be recovered if the party incurring them acted in good faith in defending an action and fees were incurred due to the tort of another. *Id*. The *Butler* court also cited the Restatement (Second) of Torts § 914(2), which supports the recovery of reasonable compensation for loss of time, attorney fees, and other reasonable expenditures incurred due to the tort of another. *Id*.

In *Nilson-Newey & Co. v. Ballou*, the Sixth Circuit addressed the issue of recovering legal fees in the context of prior litigation caused by the wrongful act of another. There, a land purchaser brought a legal malpractice action against his attorney for failing to properly describe the acreage

of the parcels in the property's legal description and failing to advise the purchaser that the acreage was only about half of what the purchaser thought. *Nielson-Newy*, 839 F.2d at 1172, 1174. The purchaser then expended time and money in an action to quiet title. *Id*. The jury found that the cost of the quiet title litigation was a direct and proximate result of the legal negligence of the defendant, attorney Ray Ballou, and thus, the plaintiff was awarded the cost of clearing the title. *Id.* at 1174. On appeal, the attorney argues that the plaintiff should not have been awarded the cost of clearing the title. *Id*. at 1177. Citing *Butler*, and the Restatement (Second) of Torts § 914(2), the Sixth Circuit affirmed the jury award for attorney's fees for of the quiet title action because they were caused by the wrongful act of the attorney. *Id*.

Defendants argue *Butler* and *Nilson-Newey* are factually different, which they are. Yet, they do not refute the underlying legal principles supporting Port of Louisville's assertion that it can recover its legal fees if it can prove that Defendants' torts caused[4] Port of Louisville to defend, in good faith, a litigation with Riverport Authority. Accordingly, Woodward's testimony as to the legal costs of Port of Louisville's underlying litigation with Riverport Authority is relevant and Defendants' motion to exclude Woodward is **DENIED** as to this category of damages.[5]

b. Lost Profits

Watco and Bouvette maintain throughout their motion that Woodward's opinions as to lost profits for potential clients are irrelevant, will confuse the issues at trial, will likely mislead the jury, and be more prejudicial than probative, because Port of Louisville has failed to produce

[4] Causation will be a question for the jury to resolve at trial.

[5] Port of Louisville's claim for attorney's fees from the underlying litigation to the extent they are sought from Bouvette, cannot be based upon communications Bouvette made in the underlying litigation as those statements would fall under the judicial statements privilege. *Halle v. Banner Indus. of N.E., Inc*., 453 S.W.3d 179 (2014). However, they can recover legal fees to the extent Port of Louisville's tortious interference and civil conspiracy claims against Bouvette involve statements made by Bouvette outside the litigation and are based on conduct not covered by the privilege, which Port of Louisville asserts caused wrongful litigation with Riverport Authority.

evidence to support the merits of its claims. [DE 134]. As discussed above, it is not inappropriate for Woodward to assume causation. This argument goes more to issues appropriate for summary judgment and is a reframing of Defendants' disagreement with the inputs Woodward used in calculating damages. If the jury finds in favor of Port of Louisville as to liability on its claims, then the jury will determine damages. Woodward will assist the jury with this inquiry by discussing the methodology she applied in calculating lost profits, which is relevant to Port of Louisville's damages for its claim of tortious interference with business relations claim. Woodward's testimony therefore exceeds the low bar for relevancy.

The Court therefore finds that Woodward's expert opinion is admissible under the standards set forth in Federal Rule of Evidence 702 and *Daubert*, except that the Court will grant a portion of the motion as set forth above on litigation fees incurred in the present lawsuit. As a result, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to exclude expert testimony. [DE 134].

## II. CONCLUSION

For these reasons, IT IS ORDERED that Defendant Bouvette's and Defendant Watco's motion to exclude proposed expert testimony [DE 134] is **GRANTED IN PART AND DENIED IN PART** as set forth above.

Rebecca Grady Jennings, District Judge
United States District Court

September 30, 2026